NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED FADO, | Civil Action No.: 11-cv-4772 |
| Plaintiff, | |
| v. | **OPINION** |
| KIMBER MANUFACTURING, INC., ARKADY TEPLINSKY and DANIEL BASSIK, | |
| Defendants. | |

**CECCHI, District Judge.**

This matter comes before the Court on the motion [ECF No. 56] of Defendants Kimber Manufacturing, Inc. ("Kimber"), Arkady Teplinsky, and Daniel Bassik (collectively, "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Fred Fado ("Plaintiff") opposed the motion on November 6, 2014 [ECF No. 65]. The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

## I.    **BACKGROUND**

This action arises out of Plaintiff's termination with Defendant Kimber, a firearms manufacturer. See Amended Complaint ("Am. Compl."), ECF No. 10-1, ¶¶ 1-2; Defendants' Statement of Material Facts ("DSMF"), ECF No. 56-2, ¶ 2; Plaintiff's Response to DSMF,

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

("PRSF"), ECF No. 65-1, ¶ 2.  Specifically, Plaintiff—who suffers from Type I diabetes—contends that Kimber discriminated against him and failed to provide accommodation for his disability.  See DSMF ¶¶ 84-85; PRSF ¶¶ 84-85.  Plaintiff also alleges he was discriminated against on the basis of race, because he is not Jewish like many of Kimber's employees, and because of his association with African Americans outside of the workplace.  See Am. Compl.

Plaintiff worked as a Quality Control Inspector in Kimber's Ridgefield, New Jersey and Yonkers, New York facilities from 2001 until 2009, when he was terminated.  See DSMF ¶ 10; PRSF ¶ 10.  Defendant Teplinsky was the Quality Control Manager at Kimber and was in charge of Plaintiff's department.  See DSMF ¶ 22; PRSF ¶ 22.  Plaintiff also contends that Defendant Bassik was Plaintiff's immediate supervisor, who controlled his schedule and signed his vacation requests, and to whom Plaintiff made requests for accommodation for his disabilities.  P's Br. in Opp., ECF No. 65, at 16; PSRF ¶ 4.

Plaintiff's diabetes requires daily monitoring and self-administered insulin.  He claims that in 2001 or 2002, a few months after starting his employment with Kimber, he asked Defendant Teplinsky for a cool place to store his insulin and that Defendant Teplinsky denied his request.  See DSMF ¶ 88; PRSF ¶ 88.  Plaintiff also asked Defendant Bassik for a locker to store his insulin, but Defendant Bassik was hostile to Plaintiff and also denied the request.  See PRSF ¶ 4.  Accordingly, between 2001 and 2007, Plaintiff kept his insulin at his desk.  See DSMF ¶ 89; PRSF ¶ 89.  Plaintiff never requested a note from his doctor nor provided medical documentation to Kimber about his diabetes-related needs.  DSMF ¶¶ 94-95; PRSF ¶¶ 94-95.  Nonetheless, Defendants maintain, and Plaintiff concedes, that Kimber had lockers available for all employees.  See DSMF ¶ 99; PRSF ¶ 99.  Plaintiff chose not to use one of these available lockers because he believed all of the lockers were in use and because "I was under the gun.  They were out to get me

. . . There would have been some issue." PRSF ¶¶ 99-101; Deposition of Fred Fado dated September 11, 2012 ("Fado Dep."), ECF No. 65-5, 141:17-22.

Between 2007 and 2009, Plaintiff began to store his insulin in the company refrigerator because he believed people were tampering with the insulin in his desk. DSMF ¶ 90; PRSF ¶ 90. Ultimately, Plaintiff moved the insulin to his car,[2] after it had been twice stolen from the refrigerator. DSMF ¶ 91; PRSF ¶ 91. Plaintiff also claims that another employee would often park in Plaintiff's preferred parking spot to make it more difficult for Plaintiff to reach his insulin, although there was no assigned parking and Plaintiff did not have a handicap parking tag. PRSF ¶¶ 104-09.

Defendants contend "Plaintiff was prone to anger, engaged in conflicts with co-workers within and outside of his department, and lost his temper over relatively insignificant events and matters." DSMF ¶ 17. Particularly, over the course of Plaintiff's employment at Kimber, Plaintiff had a tumultuous work relationship with Defendant Bassik. See DSMF ¶ 27; PRSF ¶ 27. In 2002 or 2003, a few weeks after Defendant Bassik began working at Kimber, Plaintiff complained to Defendant Teplinsky about him.   Plaintiff contends that Defendant Bassik would leave the building for hours without punching out and that Defendant Bassik "made me aware of what his pay rate was and the pay rate of the other inspectors that were Jewish or Israeli" leading Plaintiff to believe that he was being paid less because he lacks Jewish or Israeli heritage. See Fado Dep., 78:11-80:17. Plaintiff also contends that Jewish or Israeli employees, including Defendants Teplinsky and Bassik, were being paid for unused vacation days and bragged to Plaintiff about this. Id. at 226:17-227:13. After Plaintiff complained to the Human Resources Department about

---

[2]        After Plaintiff explained to his treating physician that his "insulin was getting destroyed being out in the car," his physician prescribed a type of insulin that does not require refrigeration and is not affected by changes in temperature. Fado Dep., 230:9-230:17.

Defendants Teplkinsky and Bassik, however, Kimber changed its policy so that employees could only carry one week of unused vacation days. Id. at 226:17-228:13. Moreover, Plaintiff contends that Defendant Bassik would not permit Plaintiff to take the five-minute bathroom breaks that he required to administer his insulin—something that Plaintiff needed to do about three times per day. Id. at 229:1-231:-9; 231:21-232:6; 145:10-146:4. Plaintiff complained about Defendant Bassik's behavior to his other superiors and requested an accommodation to administer insulin in 2001 and "2002 through 2005." Id. at 230:10-25. In 2006, Plaintiff asked to be transferred to the Yonkers facility to escape "Danny's [Bassik's] behavior" and its purported effects on his health. Id. at 96:21-97:18.

In February 2008, Plaintiff and Defendant Bassik got into an argument, and Plaintiff showed Defendant Bassik a tape recorder and threatened to record their conversations. DSMF ¶ 19; PRSF ¶ 19. Plaintiff claimed this was the only way to stop Defendant Bassik from harassing him. Id. Defendant Bassik complained to John Diamond, Kimber's Human Resources Manager, who attempted to resolve the conflict by speaking to both Plaintiff and Defendant Bassik. DSMF ¶ 20-21; PRSF ¶ 20-21. Diamond informed Plaintiff that if the arguments continued, both Plaintiff and Defendant Bassik could be terminated. DSMF ¶ 23; PRSF ¶ 23.

The hostilities between Plaintiff and Defendant Bassik reached their climax in October 2009. On Wednesday, October 7th, Plaintiff spoke with Maria Adams, the Ridgefield Human Resources Representative, about an ongoing conflict with Defendant Bassik. DSMF ¶ 42; PRSF ¶ 42. The next day, Plaintiff wrote an email to Defendant Teplinsky, complaining about Defendant Bassik's work performance and behavior. Foster Decl. Ex. G, ECF No. 65-11. In the message, Plaintiff mentioned that Defendant Bassik was "leaving the building without punching out" and complained that Defendant Bassik was signing off on items without actually inspecting them. Id.

4

On Friday, October 9th, Plaintiff and Defendant Bassik were involved in another argument. DSMF ¶ 46; PRSF ¶ 46. Defendants claim that Plaintiff instigated the argument and shoved Defendant Bassik. DSMF ¶ 27. Plaintiff, in turn, claims that he never shoved Defendant Bassik and that it was Defendant Bassik who was harassing him. DSMF ¶¶ 26-27; PRSF ¶¶ 26-27. Plaintiff was asked to leave the premises that morning, and he complied. DSMF ¶ 78; PRSF ¶ 78. On Monday, October 12th, Diamond and Defendant Teplinsky called Plaintiff to inform him that he was being terminated, effective immediately. DSMF ¶ 83; PRSF ¶ 83.

Plaintiff filed his original complaint on June 17, 2011 in the Superior Court of New Jersey, and Defendants subsequently removed the action to this Court on August 17, 2011. Plaintiff then filed an amended complaint on October 6, 2011. See Am. Compl., ECF No. 11. He asserted twelve causes of action against Defendants: Failure to Accommodate a Disability under the New Jersey Law Against Discrimination ("NJLAD") (Count I); Wrongful Discharge Due to Disability in Violation of the NJLAD (Count II); Discrimination in Pay and Employment Based on Race in Violation of the NJLAD (Count III); Retaliation Based on Complaints of Mistreatment and Failure to Accommodate in Violation of the NJLAD (Count IV); Individual Liability against Defendants Bassik and Teplinsky as Aider and Abettor under the NJLAD (Count V); Discrimination Based on Association in Violation of the NJLAD (Count VI); Retaliation for Complaining about Race Discrimination (Count VII); Violation of the Americans With Disabilities Act ("ADA") (Count VIII); Violation of Title VII (Count IX); Violation of Equal Protection Rights Based on Race pursuant to 42 USC § 1981 (Count X); Violation of Equal Protection Rights Based on Association pursuant to 42 USC § 1981 (Count XI); and Intentional Infliction of Emotional Distress (Count XII). Plaintiff also seeks punitive damages. Am. Compl. ¶ 80. Defendants now move for summary judgment on all counts.

Additional relevant facts will be incorporated into the discussion below.

## II.   LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986); Fed. R. Civ. P. 56(c).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . .").

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. A fact is "material" if, under

the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

## III.   DISCUSSION

For the following reasons, summary judgment is granted in part and denied in part.

### A.   Failure to Accommodate Claim (Count I)

The Court will grant summary judgment dismissing Plaintiff's Count I, because his claim is time-barred. A two-year statute of limitations applies to NJLAD claims, including a claim for failure to accommodate. Montells v. Haynes, 133 N.J. 282, 286 (1993). A failure to accommodate claim accrues when the plaintiff makes a request for accommodation and that request is denied. Wunder v. Katherine Gibbs Sch., No. CIV.A. 09-3497 (SDW), 2010 WL 2680257, at *5 n.9 (D.N.J. July 1, 2010). Because Plaintiff filed his original complaint on June 17, 2011, the denials of accommodation must have occurred on or after June 17, 2009.

Here, Defendants note that the alleged denials occurred between 2001 and 2005 and are thus time-barred. Ds' Br. in Supp., ECF No.56, at 6. Plaintiff, however, contends his claims are timely due to the "continuing violations" doctrine, P's Br. in Opp. at 11, which tolls the statute of limitations "'[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct'" until that wrongful conduct ceases. Sgro v. Bloomberg L.P., 331 F. App'x 932, 938 (3d Cir. 2009) (citing Wilson v. Wal–Mart Stores, 158 N.J. 263, 272 (1999)). Plaintiff argues his claim falls under the continuing violations doctrine because he "did not stop asking for accommodations" and "continued to need a place to store his insulin . . . ." P's Br. in Opp. at 11.

7

But, the continuing violations doctrine does not apply to save Plaintiff's failure to accommodate claim, where Plaintiff experienced discrete discriminatory acts that he knew or should have known were actionable. The doctrine "was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination." Roa v. Roa, 985 A.2d 1225, 1233 (N.J. 2010). The doctrine "does not permit . . . the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Id. Indeed, the doctrine is inapplicable to "discrete discriminatory acts that are individually actionable." Pisarz v. PPL Corp., No. 4:10-CV-01432, 2010 WL 4942536, at *2 (M.D. Pa. Nov. 30, 2010).

An employer's denial of a disabled employee's request for accommodation constitutes a discrete discriminatory act, which is individually actionable. See, e.g., Pisarz, 2010 WL 4942536 (finding defendant's alleged failure to accommodate plaintiff by denying plaintiff's request for a special chair constituted a discrete act of discrimination); Diaz v. Lezanski, No. CIV.A. 9-223 WJM, 2011 WL 2115671, at *8 (D.N.J. May 25, 2011) (finding plaintiff's request for an elevator key and her request for a single work station constituted two discrete instances of failure to accommodate and not a continuing failure to accommodate). Moreover, Plaintiff admitted that he knew that the alleged denial for his accommodation was actionable, as early as 2001:

> Q.      Okay. Did [Defendant Teplinsky] respond by speaking to you about your accommodation?
> A.      No.
> Q.      Other than -- well, did you ever e-mail him again after five months after you started?
> A.      I spoke to him. I didn't e-mail him again.
> Q.      Okay. When did you speak to him?
> A.      Probably another month or two after the original e-mail.
> Q.      What did you say to him?

> A.      I said, Arkady [Teplinsky], you know I have a serious health condition and it needs to be monitored. <u>You have a responsibility to provide me an accommodation for my diabetes which includes a place to store my insulin.</u> And the subject changed to whether it's discrimination going on in the company and he got very verbally abusive to me.

Fado Dep., 77:1-20 (emphasis added).

Nor does the Court find Plaintiff's argument compelling that his claim is not time-barred because he never stopped asking for an accommodation, always needed a place to store his insulin, and always needed to take breaks for administering it.[3]  P's Br. in Opp. at 11.  Rather, the evidence in this case, including Plaintiff's deposition testimony, demonstrates that he only made requests for accommodation between 2001 and 2005. Fado Dep., 80, 142, 230.  Plaintiff points to no evidence that supports his argument that he continued to make requests after that period. Accordingly, the Court finds that Plaintiff has failed to designate "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324.  And, because the continuing violation doctrine does not apply here, summary judgment is granted dismissing Plaintiff's failure to accommodate claim (Count I).

**B.      Discriminatory Discharge (Counts II & VIII)**

Defendants next move for summary judgment to dismiss Plaintiff's discriminatory discharge claims in violation of the NJLAD (Count II) and the ADA (Count VIII).  Defendants argue that Plaintiff has failed to present sufficient evidence to establish a prima facie case of discrimination based on disability.

---

[3]      Plaintiff testified that he checked his glucose level "three or four times a day" if he was not feeling well and "about two or three times a day" if he was feeling well.  Fado Dep., 145-146. Additionally, he stated that "on average" he would administer insulin "[i]n a seven hour period at Kimber, three times a day." <u>Id.</u> at 146.  His ongoing disability, however, does not equate with an ongoing failure to accommodate that disability, where he did not make any additional requests after 2005.

Disability discrimination claims under the NJLAD and the ADA are analyzed under the same framework. See Victor v. State, 4 A.3d 126, 145 (2010). A disability discrimination claim requires a showing that (1) plaintiff was disabled under the meaning of the statute, (2) plaintiff was qualified to perform the essential functions of the job, and (3) plaintiff suffered an adverse employment action because of the disability. Victor v. State, 952 A.2d 493, 504 (App. Div. 2008).

Defendants initially contend that Plaintiff cannot establish the first element of his claim because Plaintiff's diabetes is not a disability under the NJLAD. See Ds' Br. in Supp. at 14. But, both the federal courts in this district and the state courts of New Jersey have found that diabetes qualifies as a disability under the NJLAD. See Leonard v. Metro. Life Ins. Co., 318 N.J. Super. 337, 344 (App. Div. 1999); Fronczkiewicz v. Magellan Health Servs., Inc., No. CIV.A. 11-7542 JEI, 2012 WL 2357484, at *2 (D.N.J. June 20, 2012) (recognizing that the NJLAD holds employers liable for discriminating against people disabled due to diabetes). Here, Plaintiff has provided evidence that he needed to check his glucose level between two and four times per day and required insulin approximately three times each day. DSMF ¶¶ 110-11; PRSF ¶¶ 110-11. Additionally, Plaintiff cited evidence showing that he suffered several hypoglycemic episodes throughout the years he was employed by Defendant Kimber, at least one of which led to a car accident on July 23, 2009. DSMF ¶¶ 144-45; PRSF ¶¶ 144-45. Accordingly, the Court finds that Plaintiff's diabetes qualifies as a disability and, thus, Plaintiff has established the first element of a prima facie case of disability discrimination.

Next, Plaintiff has also satisfied the second and third elements in establishing a prima facie case. Defendants do not contest that Plaintiff was qualified to perform the essential functions of his job. Moreover, there is no question that termination from employment constitutes an adverse employment action. Rogers v. Alt. Res. Corp., 440 F. Supp. 2d 366, 374 (D.N.J. 2006). And, the

evidence gleaned from the record as a whole points to Plaintiff's diabetes as a possible reason for his termination, considering that Defendant Bassik clearly expressed hostility toward and annoyance by Plaintiff's multiple daily bathroom breaks to administer insulin and by Plaintiff's loss of functioning during his hypoglycemic states. Accordingly, the Court finds that Plaintiff sufficiently set forth a prima facie case of disability discrimination.

After a prima facie case is established, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 347 (App. Div. 1997) (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 493 (1982)). If a defendant sufficiently sets forth a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext. Id.

Here, Defendants argue that they have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination. Ds' Br. in Supp. at 15-18, 24-26. Specifically, they claim that Plaintiff was terminated because of his ongoing hostilities with Defendant Bassik, which culminated in a fight on October 9, 2009 when Plaintiff "tried to instigate an argument with Bassik and engaged in physical contact with him." Id. at 25. However, Plaintiff denies that this incident occurred, claiming that he never engaged in any physical contact with Defendant Bassik. DSMF ¶ 69; PRSF ¶ 69; Fado Dep., 125. Moreover, Plaintiff points out that the documents which Defendant Kimber's Human Resources Department "submitted to NJ Unemployment are mute on the issue of [P]laintiff's 'physical assault.'" P's Br. in Opp. at 31. Additionally, Plaintiff contends that although Defendant Bassik instigated the incident and "accosted him" on October 9, 2009, see PRSF ¶ 75, it was Plaintiff who was fired while Defendant Bassik remained employed by Kimber. Thus, Plaintiff posits that Defendants' proffered reason for his termination is merely pretextual

and that the true reason is discrimination.

Accordingly, there appears to be a dispute regarding the facts leading to Plaintiff's termination. At this stage, the Court "may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). Therefore, the Court declines to grant summary judgment to dismiss Plaintiff's discriminatory discharge claims.

### C.      Disparate Pay Claim (Count III)

Plaintiff's disparate income claim is based on his allegations that he was paid less than other employees because he is not Jewish or Israeli. See Am. Compl. Count III. For example, Plaintiff argues that he earned "much less money than Daniel Bassik in 2008 and 2009," despite the fact that Plaintiff was "unquestionably more skilled and qualified." P's Br. in Opp. at 25; PRSF ¶ 151. Defendants argue that Plaintiff has failed to cite to any evidence showing a pay disparity between himself and Jewish or Israeli employees, and they contend that Plaintiff earned more than some Jewish or Israeli employees, such as Robert Neuwenschwander. Ds' Br. in Supp. at 18. For the following reasons, the Court will grant summary judgment for Defendants on Count III.

The New Jersey Supreme Court has created a two-part test for analyzing NJLAD disparate pay claims. Kumar v. Johnson & Johnson, Inc., No. 12-779, 2014 WL 5512549, at *7 (D.N.J. Oct. 31, 2014) (citing Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 109-10 (1990)). "First, the claim must be analyzed under the standards and methodology of the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA")." Santosuosso v. NovaCare Rehab., 462 F. Supp. 2d 590, 600 (D.N.J. 2006) (citing Grigoletti, 118 N.J. at 109-10). If Plaintiff cannot establish a prima facie case under the EPA, he has a second chance to show that the work is "similar" under Title VII. Id. "Because the EPA standard is more stringent than the Title VII standard, a plaintiff who fails to meet the Title VII

standard will be unable to meet the EPA standard." Id., at n.9. To maintain a pay disparity claim under Title VII, a plaintiff must demonstrate that employees were paid differently for performing "equal work," or work of substantially equal skill, effort, and responsibility. Kumar, 2014 WL 5512549, at *7 (D.N.J. Oct. 31, 2014) (citing Noel v. The Boeing Co., 622 F.3d 266, 274 (3d Cir. 2010), as amended (Oct. 18, 2010)).

In Kumar, the court granted summary judgment to defendants on plaintiff's gender-based disparate wage claim where other employees had different positions and qualifications than the plaintiff. 2014 WL 5512549, at *7-8. Specifically, the court rejected the plaintiff's argument that she was similarly situated to two male employees, after she admitted "[the male employees] held director positions while [she] was in a manager position." Id. at 7.

Here, Plaintiff attempts to establish a wage disparity claim based on his allegations that Defendant Bassik was paid more. P's Br. in Opp. at 25. But, Plaintiff also argues that Defendant Bassik was his supervisor, had "autonomy to run things in Ridgefield as he saw fit," and had the power to affect compensation and control Plaintiff's work functions. P's Br. in Opp. at 37. Thus, as in Kumar, Plaintiff has failed to establish the "equal work" requirement of the prima facie wage disparity claim, since by Plaintiff's own admission Defendant Bassik held a supervisory role over Plaintiff's work. See Kumar, 2014 WL 5512549, at *8. Moreover, although Plaintiff alleges that "Jews took vacation but their time off was not deducted from the allotted vacation time," Plaintiff proffers no evidence to establish this claim. See Am. Compl., ¶ 49. Accordingly, Plaintiff has failed to set forth sufficient facts to support his prima facie case of pay disparity, and Defendants are entitled to summary judgment with respect to Count III of the Amended Complaint.

### D. Retaliation Based On Disability Accommodation Requests (Count IV) And For Complaining About Race Discrimination (VII)

Defendants argue that Plaintiff has not established a prima facie case of retaliation, because

Plaintiff cannot show that he engaged in a protected activity or that there is a causal nexus between the alleged protected activity and Plaintiff's termination. Ds' Br. in Supp. at 27. The Court agrees and will grant Defendants summary judgment dismissing Plaintiff's retaliation claim against them.

"To establish a prima facie case for retaliation under the NJLAD, a 'plaintiff must demonstrate: (1) that [plaintiff] engaged in protected activity; (2) the activity was known to the employer; (3) plaintiff suffered an adverse employment decision; and (4) there existed a causal link between the protected activity and the adverse employment action.'" Barroso v. Lidestri Foods, Inc., 937 F. Supp. 2d 620, 630 (D.N.J. 2013) (citing Young v. Hobart W. Grp., 385 N.J. Super. 448, 464 (App. Div. 2005)). After a plaintiff satisfies this burden, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the defendant adequately sets forth such reason, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Id. (citing Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548 (App. Div. 1995)).

First, Plaintiff argues that his "efforts to tape record Danny Bassik" constituted a protected activity. P's Br. in Opp. at 35. Plaintiff alleges that he taped conversations with Defendant Bassik in February 2008, over a year before he was terminated. Id. at 33. However, even if this constituted a protected activity, the act of taping Defendant Bassik was too remote in time from the date Plaintiff was terminated to support a causal connection to the adverse employment action. See Mann v. Prince Telecom, LLC, No. CIV. 1:12-06263, 2013 WL 3884189, at *6 (D.N.J. July 26, 2013) (holding that an interval exceeding one year was too long to establish temporal proximity); see also Dooley v. Roche Labs., Inc., No. 04-2276, 2007 WL 556885, at *10 (D.N.J. Feb. 15, 2007), aff'd sub nom., Dooley v. Roche Lab Inc., 275 F. App'x 162 (3d Cir. 2008) (finding

that an interval of "almost a full year" is too remote to support a causal connection between the alleged protected activity and the adverse action).

Additionally, Plaintiff argues that the e-mail he sent to Defendant Teplinsky on the evening before he was sent home was also a protected activity, because he complained about Defendant Bassik's conduct in the message. Id. at 33; Foster Decl. Ex. G, ECF No. 65-11. The e-mail noted that Defendant Bassik had told Plaintiff that Plaintiff was not allowed to work on a Saturday to complete a task assigned to him. Id. Plaintiff thus complained to Defendant Teplinsky that he was not being given enough "time to do my job properly . . . ." Id.

Not every complaint, however, is considered a protected activity under the NJLAD. Ogunbayo v. Hertz Corp., 542 F. App'x 105, 107 (3d Cir. 2013). Instead, "only challenges to discrimination prohibited by the NJLAD—such as discrimination on the basis of race, age, or gender, N.J. Stat. Ann. § 10:5–12(d)—constitute 'protected activity.'" Id. In Ogunbayo, the court found the plaintiff's complaints were not a protected activity because "she never mentioned any NJLAD-protected characteristic in her letters, let alone attempted to connect the alleged mistreatment to any such characteristic." Ogunbayo, 542 F. App'x at 107. Instead, the court found it was merely a "general complaint of unfair treatment" that does not amount to a charge of illegal discrimination. Id. (citing Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995)). Similarly, here, Plaintiff's e-mail to Defendant Teplinsky complains only of Defendant Bassik's "unprofessionalism" and his "abusive and retaliatory behavior," but does not allege discrimination based on a NJLAD category (i.e., race, gender, religion, etc.). See Foster Decl. Ex. G.

Moreover, although Plaintiff used the word "retaliatory" in the e-mail, the use of this word alone is insufficient to convert the e-mail into a form of "protected activity." Ogunbayo, 542 F. App'x 105, 107 n.2; see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716

F.3d 10, 17 (2d Cir. 2013) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."). Indeed, looking at the substance of the e-mail, Plaintiff appears to be complaining about Defendant Bassik not giving him enough time to complete his work. Accordingly, because sending the e-mail was not a protected activity, the Court finds that Plaintiff's e-mail is insufficient to support a retaliation claim. Defendants are granted summary judgment dismissing Counts IV and VII.

### E.   Defendants Bassik And Teplinsky's Aider And Abettor Liability (Count V)

Defendants argue that they are entitled to summary judgment on Count V of the Amended Complaint because Defendants Bassik and Teplinsky cannot be held individually liable under the NJLAD. See Ds' Br. in Supp. at 28-30. Plaintiff argues that New Jersey law allows individual liability against these Defendants. P.'s Br. in Opp. at 36-37. For the following reasons, the Court will grant summary judgment dismissing the claim for individual liability against Defendant Teplinsky only.

The NJLAD holds "employers" liable for acts of employment discrimination, and specifically defines that term for the purposes of the statute. Cicchetti v. Morris Cnty. Sheriff's Office, 194 N.J. 563, 591 (2008). Significantly, the plain meaning of "employer" under the NJLAD does not include individual supervisors or co-employees. Tarr v. Ciasulli, 181 N.J. 70, 83 (2004) ("Under a plain reading of these definitions an individual supervisor is not defined as an "employer" under the LAD."). Instead, supervisors or co-employees may only be liable if they are "aiders or abettors" to the illegal conduct. Cicchetti, 194 N.J. at 595; see also N.J.S.A. 10-5:12(e). To hold an individual liable as an aider or abettor, a plaintiff must show she engaged in

"active or purposeful conduct" to assist the principal violation. Tarr v. Ciasulli, 181 N.J. 70, 84 (2004).

Some courts have held that an employee "cannot aid and abet his own wrongful conduct," and therefore cannot be individually liable if he is the principal wrongdoer. Newsome v. Admin. Office of Courts of State of N.J., 103 F. Supp. 2d 807, 823 (D.N.J. 2000), aff'd sub nom., Newsome v. Admin. Office of the Courts of the State of N.J., 51 F. App'x 76 (3d Cir. 2002) (citing Hurley v. Atl. City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999) (noting that aiding and abetting liability may lie for harm resulting to a third person from the conduct of another (emphasis added)). More recently, however, "courts in this district have held that a supervisor can be personally liable for his own conduct under the aiding and abetting provision of the LAD." Mann v. Estate of Meyers, 61 F. Supp. 3d 508, 529 (D.N.J. 2014), reconsideration denied, No. CIV. 11-1679, 2015 WL 1107253 (D.N.J. Mar. 11, 2015).[4]

In this case, Plaintiff argues that Defendants Bassik and Teplinsky engaged in "affirmatively harassing acts" for which they should be individually liable. P's Br. in Opp. at 37. As to Defendant Bassik, it is clear that he is the alleged primary wrongdoer, as Plaintiff bases

---

[4]     The Mann Court stated: "When interpreting the NJLAD, I am bound by state authority. Since Rowan, courts in this district have held that a supervisor can be personally liable for his own conduct under the aiding and abetting provision of the LAD." Mann v. Estate of Meyers, 61 F. Supp. at 529; see also Rowan v. Hartford Plaza Ltd., No. A-0107-11T3, 2013 WL 1350095, at *8 (App. Div. Apr. 5, 2013) ("Based on the 'broad and pervasive' reach of the LAD, and the requirement that it be 'liberally construed' to effectuate its purpose, any suggestion that N.J.S.A. 10:5–12(e) permits individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct, appears to us to be untenable."); Godfrey v. Thermco, No. 13–cv–4750, 2013 WL 5952046, at *5–6 (D.N.J. Nov. 4, 2013) (Linares, J.) (acknowledging that Rowan is unpublished and non-binding but agreeing with three other courts in this district finding persuasive Rowan's reasoning in broadly interpreting the NJLAD, despite the Rowan construct being "admittedly an awkward theory" (internal quotation marks omitted)).

almost all his allegations on Defendant Bassik's conduct. <u>See generally</u> Am. Compl. To the extent that Plaintiff alleges that Defendant Bassik discriminated against him by aiding Plaintiff's unlawful termination, the Court finds that Defendant Bassik may be held individually liable for his own conduct under an aider and abettor theory. <u>See Rowan</u>, 2013 WL 1350095, at *8. Accordingly, summary judgment is denied as against Defendant Bassik.

As to Defendant Teplinsky, Plaintiff has failed to allege sufficient facts to support his claim that Defendant Teplinsky aided or abetted Bassik's conduct. To establish liability against Defendant Teplinsky under this theory, Plaintiff must establish that Defendant Teplinsky "knowingly and substantially assist[ed] the principal violation." <u>Spinks v. Twp. of Clinton</u>, No. HNT-L-342-03, 2006 WL 941973, at *15 (N.J. Super. Ct. Law Div. Mar. 27, 2006), aff'd, 955 A.2d 304 (App. Div. 2008) (citing <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 929 (2004)). That does not appear to be the case here. First—unlike Defendant Bassik—Defendant Teplinsky was not the principal wrongdoer. Plaintiff fails to show that Defendant Teplinsky discriminated against him or denied him necessary accommodations within the two-year statute of limitations period claims under NJLAD. Second, while Plaintiff alleges that Defendant Bassik engaged in discriminatory behavior toward Plaintiff, he fails to connect Defendant Teplinsky to any specific wrongful acts committed by Defendant Bassik. <u>See</u> P's Br. in Opp. at 37. Accordingly, the Court grants summary judgment for Defendant Teplinsky on this claim but will allow Count V as against Defendant Bassik to move forward.

### F.   Racial Discrimination Claims (Counts VI & XI)

Defendants next move for summary judgment on Plaintiff's claims related to alleged racial discrimination. Plaintiff argues that he was discriminated against for associating with his girlfriend, who is African American, and his children, who are bi-racial. Am. Compl. ¶¶ 57-61;

77-81.  He raises these claims under the NJLAD (Count VI) and 42 USC § 1981 (Count XI).[5]

Defendants argue that Plaintiff has failed to establish that Defendants knew about his family and

that Plaintiff cannot link his termination to any racial association.  See Ds' Br. in Supp. at 19.

These claims will be dismissed, because Plaintiff has not provided sufficient evidence to raise a

genuine issue of material fact to support Counts VI and XI.

In order to prove a prima facie case of racial discrimination under the NJLAD and Section

1981, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was qualified

for the position he sought to attain or retain; (3) he suffered an adverse employment action; and

(4) the action occurred under circumstances that could give rise to an inference of intentional

discrimination.  Mann v. Prince Telecom, LLC, No. CIV. 1:12-06263 RMB, 2013 WL 3884189,

at *4 (D.N.J. July 26, 2013).

Here, Plaintiff first argues that he was subjected to racist comments over a period of several

years by Defendant Bassik and that his termination was connected to Defendant Bassik's racism.

P's Br. in Opp. at 24.  Plaintiff, however, only cites to comments made by Defendant Bassik

between 2005 and 2006—several years before he was terminated.  See P's Counter Statement of

Material Facts, ECF No. 65-2, ¶ 61.  These comments cannot serve as the basis of his racial

discrimination claim, as they are too temporally remote. Moreover, Plaintiff cites no evidence to

support his contention that Defendant Bassik was involved in the decision-making process to

terminate him.  See P's Br. in Opp. at 24.  Plaintiff also does not provide any evidence linking

Defendant Bassik's comments, made years prior to his termination, to the adverse action.

---

[5]     "In the employment discrimination context, § 1981 and NJLAD claims are analyzed" under the same framework. Mann v. Prince Telecom, LLC, No. CIV. 1:12-06263 RMB, 2013 WL 3884189, at *3 (D.N.J. July 26, 2013). Accordingly, the Court analyzes both claims simultaneously.

For all of these reasons, Plaintiff has not established a prima facie case of racial discrimination. See Davis v. Cleary, No. CIV. 09-0925, 2011 WL 4435697, at *4 (D.N.J. Sept. 22, 2011) (finding offhand remarks, made more than a year before the alleged discriminatory action, were insufficient to support an inference of racial discrimination); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1999))). Accordingly, summary judgment is granted to Defendants on Plaintiff's claims of racial discrimination (Counts VI and XI). [6]

### G. Title VII And Section 1981 Claims (Count IX & X)

Defendants move for summary judgment on Plaintiff's Title VII and Section 1981 claims for alleged discrimination and termination due to Plaintiff's lack of Jewish heritage, on the basis that Plaintiff has failed to raise an inference of discrimination. Ds' Br. in Supp. at 15-23.

For discrimination claims under Title VII and Section 1981, a plaintiff must show that: (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, such as termination, and (4) that the circumstances around the adverse employment action give rise to an inference of unlawful discrimination. [7] Flax v. Delaware, 329

---

[6]     The Court notes that Plaintiff submitted a letter on April 29, 2015 (ECF No. 73), to which Defendants responded on May 6, 2015 (ECF No. 74). The Court has considered the parties' arguments therein. While the Court agrees with Plaintiff that the NJLAD may apply to protect family members of protected persons from "associational race discrimination," the Court nevertheless finds that the conduct Plaintiff complains of (Bassik's remarks) is insufficient to raise a genuine issue of material fact regarding his racial discrimination claim.

[7]     "In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim." Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999). Accordingly, the Court will analyze both Title VII and Section 1981 claims under the same analytical framework.

F. App'x 360, 363 (3d Cir. 2009) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir.

1999)).  Generally, Plaintiff asserts that Jewish employees received favorable treatment at Kimber.

Fado Dep., 26.  Plaintiff also alleges that he was discriminated against because he was not included

in trainings that occurred in 2004 and 2006, which were held either four or six years before he was

terminated. Fado Dep., 150.  Additionally, Plaintiff relies on comments made by Defendant Bassik

about Bassik receiving special treatment because he was Jewish. P's Br. in Opp. at 25.

The evidence cited by Plaintiff in support of these claim is insufficient to raise a genuine

issue of material fact.  As noted above, Defendant Bassik's stray remarks—which occurred long

before Plaintiff's termination and which Plaintiff has not shown influenced the decision to

terminate him—cannot support Plaintiff's discrimination claims.  See Walden v. Georgia-Pac.

Corp., 126 F.3d 506, 521 (3d Cir. 1997); see also Ezold, 983 F.2d at 546-47 (arguing that to allow

a series of stray remarks over a five year period to suffice to prove discriminatory motive would

be to overstep the limits of Title VII).  Additionally, Plaintiff points to no other specific evidence

that links his complaints about "preferential treatment shown to Jews" to his alleged racial

discrimination or termination in 2009. See P's Br. in Opp. at 24-25; 34-35.  Accordingly, because

Plaintiff has failed to raise a genuine issue of fact to support his Title VII and Section 1981 claims

for discrimination on account of his not being Jewish, the Court grants summary judgment for

Defendants on Counts IX and X of the Amended Complaint.

### H.   Intentional Infliction Of Emotional Distress (Count XII) and Punitive Damages

Finally, Plaintiff (1) asserts a claim for intentional infliction of emotional distress, and

(2) seeks punitive damages.  On his intentional infliction of emotional distress claim, Plaintiff

alleges Defendants failed to obtain medical help for him when he suffered hypoglycemic episodes.

Am. Compl. ¶ 12. In support of his request for punitive damages, Plaintiff cites to at least three facts: (1) Defendant Bassik's conduct surrounding his hypoglycemic episodes, (2) Defendant Bassik's statements to Plaintiff, including "I hope you die" on October 9, 2009, and (3) Defendant Teplinsky's alleged "endorsement" of Defendant Bassik's behavior.

To prevail on an intentional infliction of emotional distress claim, a plaintiff must prove four elements. First, a plaintiff must prove that the defendant acted either intentionally or recklessly. Ingraham v. Ortho-McNeil Pharm., 25 A.3d 1191, 1195 (N.J. Super. Ct. App. Div. 2011) (citing Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 860 (N.J. 1988)). A defendant acts intentionally when he (i) intends to do the act and (ii) intends to produce the emotional distress. Id. He acts recklessly when he deliberately disregards a "high degree of probability that emotional distress will follow." Id. Second, the plaintiff must show defendant's conduct was "extreme and outrageous." Id. Third, the plaintiff must prove defendant's conduct was a proximate cause of the emotional distress. Id. Fourth, "the emotional distress suffered by plaintiff must be so severe that no reasonable [person] could be expected to endure it." Buckley, 544 A.2d at 863 (internal quotations omitted). Punitive damages are available under New Jersey law where a plaintiff establishes "actual malice" or "wanton and willful disregard" by the defendant. Horn v. Wal-Mart Stores, Inc., No. 08-5635GEB, 2009 WL 4672329, at *3 (D.N.J. Dec. 7, 2009).

The Court reserves decision on Plaintiff's claim for intentional infliction of emotional distress and request for punitive damages. The decision as to whether the Court will instruct the jury on intentional infliction of emotional distress and punitive damages and allow Plaintiff to

argue that punitive damages are warranted will depend on the evidence presented at trial.[8]

## IV.   **CONCLUSION**

For the foregoing reasons, summary judgment is granted in part and denied in part.  The Court grants summary judgment to Defendants as to Plaintiff's claims for Failure to Accommodate (Count I), Disparate Pay (Count III), Retaliation Based on Complaints of Mistreatment and Failure to Accommodate in Violation of the NJLAD (Count IV), Individual Liability as Aider and Abettor under NJLAD by Defendant Teplinsky (Count V), Discrimination Based on Association in Violation of the NJLAD (Count VI), Retaliation for Complaining about Race Discrimination (Count VII), Violation of Title VII (Count IX), Violation of Equal Protection Rights Based on Race pursuant to 42 USC § 1981 (Count X), and Violation of Equal Protection Rights Based on Association pursuant to 42 USC § 1981 (Count XI).  The Court denies summary judgment to Defendants as to Plaintiff's Wrongful Discharge Due to Disability in Violation of the NJLAD (Count II), Individual Liability as Aider and Abettor under NJLAD by Defendant Bassik (Count V), and Violation of the ADA (Count VIII) claims.  Finally, the Court reserves decision on Plaintiff's claim for Intentional Infliction of Emotional Distress (Count XII) and Plaintiff's request for punitive damages.

DATED: _July 18, 2016_                                   _____

                                                              **CLAIRE C. CECCHI, U.S.D.J.**

---

[8]     To the extent Plaintiff sought to allege a hostile work environment claim based on race, disability, or religion, the Amended Complaint does not appear to set forth a specific count to that effect.  Although the parties summarily address the issue of hostile work environment in their papers, a pleading may not be amended through briefing.  See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).  Accordingly, the Court declines to address this issue, which is seemingly raised for the first time in summary judgment briefing.  In the interest of fairness, the Court will grant Plaintiff thirty days to amend his pleading for the sole purpose of setting forth a hostile work environment claim, should he wish to do so.